UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| **BRADLEY D. KARR,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-CV-00037-NCC |
| | ) |
| **KILOLO KIJAKAZI,**[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Bradley D. Karr ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 14), Defendant has filed a brief in support of the Answer (Doc. 18), and Plaintiff has filed a reply brief (Doc. 19). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I. PROCEDURAL HISTORY

Plaintiff filed his application for SSI on September 27, 2017 (Tr. 164-69). Plaintiff was initially denied on December 12, 2017, and he filed a Request for Hearing before an

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Administrative Law Judge ("ALJ") (Tr. 80-84, 89-91).  After a hearing, by decision dated May 10, 2019, the ALJ found Plaintiff not disabled (Tr. 7-26).  On May 15, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-6).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 31, 2017, his alleged onset date (Tr. 12).  The ALJ found Plaintiff has the severe impairment of clinical obesity, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-17).  In doing so, the ALJ found Plaintiff's impairment of anxiety not to be a severe impairment and Plaintiff's complaints of shortness of breath not to be a medically determinable impairment (*Id.*).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform the full range of medium work (Tr. 17).  Medium work, as defined in 20 C.F.R. § 416.967, involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A person who can do medium work, can also do sedentary and light work.  20 C.F.R. § 416.967.  The ALJ found that Plaintiff is capable of performing past relevant work as a sandblaster (DOT # 503.687-010; SVP of 2) (Tr. 20).  The ALJ further determined that Plaintiff is capable of performing his more recent past relevant composite occupation which incorporated duties of a salvage laborer (DOT # 929.687-022l SVP of 2) and a "working supervisor" (DOT # 183.167-018; SVP of 5 as performed) (Tr. 21).  In the alternative, the ALJ determined Plaintiff is capable of performing other occupations that exist in significant numbers in the national economy, based on the direct

2

application of Medical-Vocational Rule 203.12 (*Id.*).  Thus, the ALJ concluded that Plaintiff has not been under a disability from August 31, 2017, through the date of the decision (Tr. *Id.*).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. § 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. § 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. § 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. § 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. § 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or

3

her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. § 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue,* 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Id.*  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's

conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two arguments. First, Plaintiff asserts that the ALJ failed to give proper weight to treating nurse practitioner Simon Katumu's opinion (Doc. 14 at 6-10). Second, Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC because he failed to consider all of Plaintiff's impairments, including those that were determined to be non-severe (*Id.* at 11-13). For the following reasons, the Court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. Opinion of Nurse Simon Katumu

First, Plaintiff asserts that the ALJ failed to give proper weight to treating nurse practitioner Simon Katumu's ("Nurse Katumu") opinion (Doc. 14 at 6-10). Specifically, Plaintiff argues that the ALJ did not perform the evaluation required by 20 C.F.R. § 416.920c (*Id.* at 7-8). [2]

---

[2] Plaintiff asserts that the new regulations will have a "catastrophic impact on future claimants' ability to obtain benefits" as the ALJ in this case "appears to take the position that the March 2017 rule change endowed [him] with [the] ability to make [his] own medical findings" (Doc. 14 at 10; Doc. 19 at 1). The Court is mindful of the significant shift in the regulatory scheme as it relates to the Commissioner's review of medical opinion evidence but notes that "the disability determination process is not an adversarial process" and that the Court's maintains its ability to

5

Because Plaintiff filed his application after March 27, 2017, the new Social Security regulations regarding the evaluation of medical evidence applied to his case. 20 C.F.R. § 416.920c. Under the new regulations, an ALJ is no longer required to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. § 416.920c(a). Rather, the ALJ is to consider factors in determining how persuasive to find medical opinions and prior administrative medical findings. 20 C.F.R. § 416.920c(b). The two most important factors an ALJ must consider in evaluating a medical opinion are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Additional factors that an ALJ may, but is not required to, consider in evaluating a medical opinion are the relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, the examining relationship, specialization, and additional factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(c)(3)-(5). An ALJ will address these other factors if he finds that two medical opinions are not exactly the same but are equally persuasive by being equally well-supported and consistent with the record. 20 C.F.R. § 416.920c(b)(3).

Under the new regulations, a "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. § 404.1513(a)(2). A medical opinion does not include judgments about the

---

review the record as a whole to ensure that the ALJ's determination is supported by substantial evidence. *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020).

nature and severity of an individual's impairments, medical history, clinical findings, diagnosis, response to prescribed treatment, or prognosis.  20 C.F.R. § 404.1513(a)(3).

On February 18, 2019, Nurse Katumu completed a medical source statement on behalf of Plaintiff (Tr. 709-12).  Nurse Katumu opined that Plaintiff would need to lie down hourly (Tr. 709).  Nurse Katumu further opined that Plaintiff could lift less than ten pounds both occasionally and frequently,[3] could only stand and walk about two hours of an eight-hour day and sit two hours of an eight-hour day (*Id.*).  In support of these significant limitations, Nurse Katumu only indicated that the medical finding of "shortness of breath" (Tr. 709-12).

The Court finds that the ALJ properly considered the opinion of Nurse Katumu.  After providing a fairly detailed overview of the opinion, the ALJ found Nurse Katumu's opinion to be "unpersuasive" because it was inconsistent with and unsupported by his own treatment records and the evidence as a whole (Tr. 20).  Indeed, upon review of the record, Nurse Katumu's treatment records did not support the extent of limitation in his opinion.  For example, as noted by the ALJ, Nurse Katumu's records do not include any objective evidence of a medically determinable pulmonary impairment (Tr. 20).  As it relates to his obesity, Nurse Katumu counseled Plaintiff in dietary management and encouraged Plaintiff to exercise (Tr. 443, 447, 490, 511, 523, 536, 603, 623, 656).  At times, Nurse Katumu prescribed a weight loss medication, but Plaintiff was not always compliant (Tr. 661, 682).  In fact, most of Nurse Katumu's physical exams indicate normal findings in all areas including a review of Plaintiff respiratory and musculoskeletal systems (Tr. 442, 446, 489, 510, 522, 602, 623, 655, 661, 681, 690, 704).

---

[3] As indicated on the form, frequently means from 1/3 to 2/3 of an 8-hour day and occasionally means from very little up to 1/3 of an 8-hour day (Tr. 710).

7

The ALJ's assessment is further supported by the record as a whole.  During the relevant period, physical examinations were consistently unremarkable showing generally normal or mild abnormalities.  For example, in addition to those records already addressed from Nurse Katumu, other providers indicated normal breathing effort and clear lungs, no cardiac abnormalities, normal gait and extremities, and no edema (Tr. 494, 551, 636).  Objective testing was also normal.  For example, chest x-rays from November 2017 indicate no acute cardiopulmonary findings and only "slightly prominent" markings that "may" be indicative of a "possible" chronic lung condition (Tr. 466).  A pulmonary function test was similarly unremarkable and not apparently addressed by any provider (Tr. 454).  Pulmonary function testing—Spirometry, 3 Soc. Sec. Law & Prac. § 42:240 (citing 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (Listings) § 3.00).  No other objective medical testing is obvious from the record.

The ALJ also found the opinion to be unpersuasive because Nurse Katumu did not provide any narrative explanation or other support of his opinion of Plaintiff's limitations (Tr. 20).  As noted above, Nurse Katumu did not provide reference to any objective medical findings, instead noting that Plaintiff's limitations were caused by "shortness of breath" (Tr. 709-12).  An ALJ may properly discount a medical opinion where it consists mostly of a checklist form with little to no elaboration.  *See also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

Regardless, having determined that Katumu's opinion was inconsistent with his own records and the record as a whole and not having determined that another opinion was equally as persuasive, the ALJ was not required to articulated how he considered the other most persuasive factors in paragraphs (c)(3) through (c)(5).  *McCoy v. Saul*, No. 4:19-cv-00704-NKL, 2020 WL 3412234, at *9 (W.D. Mo. June 22, 2020) ("[B]ecause the ALJ did not find the opinions of [two physicians] to be equally as persuasive as the consultants', he was not required to 'articulate how

[he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5).")." Therefore, the Court finds that the ALJ properly evaluated the opinion of Nurse Katumu.

Finally, to the extent Plaintiff appears to assert that the ALJ mistakenly failed to support his RFC determination with a medical opinion, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**B. RFC**

Second, Plaintiff argues that the ALJ erred in his RFC determination (Doc. 14 at 11-13). Specifically, Plaintiff argues that the ALJ did not consider the combined effect of all of Plaintiff's impairments—anxiety, obesity, and shortness of breath (*Id.* at 11). RFC is the most a claimant can still do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 404.1545(a)(1). An ALJ determines a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations." *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). *See also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley*, 829 F.3d at 932 (quoting *Cox*, 495 F.3d at 619). "An administrative law judge may not draw upon [his or her] own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

9

As previously indicated, the ALJ found Plaintiff has the RFC to the full range of medium work (Tr. 17). Medium work, as defined in 20 C.F.R. § 416.967, involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A person who can do medium work, can also do sedentary and light work. 20 C.F.R. § 416.967. The ALJ did not include any non-exertional limitations in his RFC determination.

The Court finds that the ALJ properly considered all of Plaintiff's medically determinable impairments. As a preliminary matter, although Plaintiff asserts that the ALJ erred in failing to consider Plaintiff's shortness of breath in his RFC determination, Plaintiff does not appear to raise any dispute as to the ALJ's conclusion that his shortness of breath was not a medically determinable impairment.[4] As such, the ALJ was not required to review or include limitations related to that impairment. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). *See also Brockman v. Berryhill*, No. 2:16-CV-00032 JAR, 2017 WL 4339502, at *4 (E.D. Mo. Sept. 29, 2017); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). The ALJ met his burden and specifically indicated that he "finds that the combination of *all* of [Plaintiff's]

---

[4] The Court notes that the ALJ conducted a thorough review of Plaintiff's complaint of shortness of breath (Tr. 16). As noted by the ALJ, an allegation regarding a symptom without further diagnosis and objective medical evidence establishing an impairment may not constitute a medically determinable impairment (*Id.*). *See* Tr. 682 (Plaintiff "complaint of persistent shortness of breath which he has been attributing to the weight gain but given his smoking history *could* be something else like COPD.") (emphasis added). *See* 20 C.F.R. § 416.921 ("Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).").

medically determinable impairments do not reasonably cause limitations beyond those already articulated in the residual functional capacity" (Tr. 19) (emphasis added).

As it specifically relates to Plaintiff's anxiety, the ALJ conducted an overview of Plaintiff's complaints and specifically noted that Plaintiff reported that his anxiety kept causing him to lose jobs, he felt exhausted and spent most of the normal day "laying around," and he sometimes stayed in the same clothes for several consecutive days (Tr. 12 (citing Tr. 218, 246)). Nonetheless, the ALJ found Plaintiff's impairment of anxiety not to be severe. In so doing, the ALJ reviewed the "paragraph B" criteria, finding Plaintiff had no more than a mild limitation in all four areas—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 13). The ALJ found that Plaintiff's anxiety symptoms initially manifested in the context of alcohol withdrawal (Tr. 13 (citing Tr. 352, 356, 368, 374)). While, as noted by the ALJ, Plaintiff sought mental health treatment through Clarity Healthcare, Plaintiff was not initially diagnosed with an anxiety disorder and when he was, it was preliminarily noted as alcohol induced anxiety disorder (Tr. 13, 433). Plaintiff discontinued therapy within six months (Tr. 13). *See also* Tr. 37 (testifying that he had not seen a counselor for approximately a year before the hearing); Tr. 531 (Plaintiff "[d]oes not feel the need for a Clarity Therapist for coping skills and stress mgt."). Plaintiff, nonetheless, continued treatment via medication management (Tr. 13-14). During these appointments, as noted by the ALJ, the mental status observations were generally unremarkable indicating that while Plaintiff may have a depressed and anxious mood that his appearance was within normal limits, his activity was within normal limits, he was cooperative, had full affect, clear speech, logical though process, perception, and thought content, and his cognition, insight and judgment were all within normal limits (Tr. 586-87, 594, 607, 614-15,

629-30, 641-42, 648-49, 667, 673-74, 694-95, 726). Indeed, Plaintiff reported that his anxiety had improved. *See, e.g.,* Tr. 526 ("Presents with anxiety and depression today but says it is improved. Said he does not wake up in a panic anymore. It helps when he has visitors."). The ALJ later considered the extent to which these records supported a conclusion that Plaintiff required "any non-exertional limitations, such as for the postural activities he could perform or the types of work environments to which he could be exposed" and concluded that there were not any specific objective findings to support non-exertional limitations (Tr. 19).

To the extent Plaintiff asserts that the ALJ finds that Plaintiff can perform the full range of medium work in conflict with his earlier finding that Plaintiff's severe obesity significantly limits Plaintiff's ability to perform basic work activities creating an apparent conflict, the Court finds this argument unavailing (Doc. 14 at 11). The ALJ limited Plaintiff to medium, not heavy or very heavy, work. As noted previously, medium work, as defined in 20 C.F.R. § 416.967, involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 416.967(c). By way of comparison, heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. § 416.967(d). Indeed, a limitation to medium work is significant as it relates to an individual's ability to lift and carry. Plaintiff fails to explain how a limitation to medium work conflicts with the ALJ's determination that Plaintiff's obesity is a severe impairment.

Finally, Plaintiff briefly argues that the ALJ erred in his alternative finding that Plaintiff could perform other occupations that exist in significant numbers as the vocational expert did not testify to other jobs in the economy other than Plaintiff's past work and thus there is no substantial evidence to support this finding (Doc. 14 at 11-12). However, as the ALJ determined

Plaintiff could perform medium work without any further limitations, the ALJ could rely on the Medical Vocational Guidelines (also known as the "Grids"),[5] 20 C.F.R. Part 404, Subpart P, Appendix 2, to determine whether a finding of disability was warranted. *Gray v. Apfel*, 192 F.3d 799, 802 (8th Cir. 1999) ("[The] Commissioner may carry this burden by referring to the medical-vocational guidelines or 'Grids' which are fact-based generalization[s] about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment."). Here, as noted by the ALJ, the direct application of Medical Vocational Rule 203.12, given Plaintiff's "advanced age," high school education, and past skilled work with nontransferable skills, a finding of not disabled was required. Therefore, the Court finds the ALJ's RFC determination to be supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

---

[5] "The medical-vocational guidelines, or grids, 'are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (citing *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011)). "The grids come into play at step five of the analysis, where the burden shifts to the Commissioner to show that the claimant has the physical residual capacity to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience." *Phillips*, 671 F.3d at 702 (citing *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either disabled or not disabled) directed by the relevant Rule or line of the applicable Table." *Phillips*, 671 F.3d at 702 (quoting *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993)).

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 27th day of September, 2021.

                                          /s/ Noelle C. Collins
                                        NOELLE C. COLLINS
                                        UNITED STATES MAGISTRATE JUDGE